UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN A. SMITH,

        Plaintiff,                      Case Number: 08-15317

v.                                             ARTHUR J. TARNOW
                                                  UNITED STATES DISTRICT COURT
COMMISSIONER OF SOCIAL SECURITY,

                                       VIRGINIA M. MORGAN
        Defendant.                UNITED STATES MAGISTRATE JUDGE

_____ /

**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 13)**

      Plaintiff Dawn A. Smith appeals, through counsel, the Social Security Commissioner's decision denying her disability insurance benefits. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**I. Background**

      On September 7, 2005, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr. 60). On September 19, 2005, Plaintiff filed an application for supplemental security income. (Tr. 69). In both applications, Plaintiff alleged a disability onset date of October 4, 2004. (Tr. 60, 69). Plaintiff claimed disability due to hand injury that occurred in 1998, which causes her right hand to swell. (Tr. 113).

      Plaintiff's application was initially denied on January 13, 2006. (Tr. 49). Thereafter,

Plaintiff filed a timely request for a hearing. (Tr. 48). Plaintiff appeared, with her attorney, for an administrative hearing on June 3, 2008. (Tr. 14, 23). On July 22, 2008, Administrative Law Judge Roger W. Thomas issued a decision affirming the denial of disability benefits. (Tr. 14-21).

ALJ Thomas applied the five-step sequential analysis set out in the SSA's regulations to determine whether Plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, ALJ Thomas found that Plaintiff is not currently engaged in substantial gainful activity and has not been so engaged since October 4, 2004. (Tr. 16). At step two, the ALJ found that Plaintiff has the following severe impairments: "morbid obesity, recurring right wrist de Quervain's tendonitis (normal EMG), a C6/7 bulge without stenosis or radiculopathy, a history of cervical strain, right scaphoid fracture (resolved), possible carpal tunnel syndrome, arthritis of the bilateral knees and probable inferior wall diaphragm attenuation defect (EF 37%)." (Tr. 16). The ALJ concluded, at step three, that Plaintiff's impairments are non-severe because her physical impairments are "well managed with medication or occur episodically" and Plaintiff's medically determinable mental limitation does not cause more than a "minimal limitation in claimant's ability to perform basic mental work activities. . . ." (Tr. 17). At steps four and five, ALJ Thomas decided that Plaintiff has the residual functional capacity to perform the full range of light work with no repetitive gripping and can perform past relevant work as a fast food worker and office clerk. (Tr. 18, 21). In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could be expected to produce the alleged symptoms but Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible. (Tr. 18).

Plaintiff filed a timely request for review with the Social Security Appeals Council. The Appeals Council denied her request on November 24, 2008. (Tr. 4).

On December 30, 2008, Plaintiff initiated this civil action for judicial review of the denial of benefits. (Doc. No. 1). The Honorable Arthur J. Tarnow referred this case to this court on January 7, 2009, for determination of all non-dispositive motions and issuance of a Report and Recommendation.

## II. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

## III. Analysis

### A. Plaintiff's Credibility

Plaintiff first argues that the ALJ erred in evaluating Plaintiff's credibility. (Pl.'s Br. 10–11).

3

Specifically, Plaintiff disputes the ALJ's findings that she applied for disability due to job loss, not because of her impairments, that she has shown poor motivation to return to work after the birth of her child, has not sought out vocational training, education or job search assistance, that her statements concerning her symptoms are not supported by the medical evidence, and the large gaps in medical treatment demonstrates stable symptoms. (Pl.'s Br. 11-12, 15). The Commissioner responds that the ALJ reasonably evaluated Plaintiff's credibility by evaluating Plaintiff's subjective complaints of disability in light of the medical evidence, her daily activities and her work history. (Def.'s Br. 15). The Commissioner further argues that the ALJ's findings are supported by the record. (Def.'s Br. 15).

The record supports the ALJ's credibility finding with respect to Plaintiff's work history. Plaintiff became unemployed on October 4, 2004, but did not report any symptoms related to her alleged disability until June 2005. (Tr. 20, 69, 114, 167). From the long lapse between her unemployment date and her first reported symptoms, the ALJ could properly infer that Plaintiff sought disability benefits starting from October 4, 2004 due to her inability or unwillingness to find work rather than actual disability. There is nothing inherently erroneous in the ALJ's decision to rely on his own reasonable assessment of the record over the claimant's personal testimony. *See* S.S.R. 96-7p (stating that ALJs may rely on "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history" to assess credibility).

The ALJ also stated that Plaintiff "has shown poor motivation to return to work" as evidenced by her "limited earnings after 2000 and the birth of her child . . . the claimant has not sought out vocational rehabilitation or community education or job search assistance . . . ." (Tr. 20).

4

Plaintiff notes that she did have vocational training in phlebotomy in 2005. (Pl.'s Br. 11). Although it is true that the ALJ did not credit Plaintiff with having completed vocational training in that specific sentence, the ALJ considered Plaintiff's vocational training, as he mentions it on page five of his opinion. (Tr. 18). In any event, Plaintiff has not shown or explained why this slight error warrants reversal.

Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff was not disabled because Plaintiff's statement that she is unable to perform all work due to a 1998 right hand injury, which makes it difficult to work some days due to pain and swelling, is supported by the record. (Pl.'s Br. 11). Plaintiff's allegation of total disability due to a 1998 hand injury are not supported by the record. Indeed, the earliest medical evidence Plaintiff relies on is February 2006, and the first mention of hand pain in Plaintiff's medical records was on June 29, 2005. (Tr. 174). There is no medical evidence or opinion linking Plaintiff's 1998 hand injury to her current condition. Moreover, the medical evidence Plaintiff cites on appeal, specifically records from Dr. Bhatt and Dr. Wagner, only document soft tissue swelling in the dorsal and radial aspects of the wrist beginning in 2005. Neither doctor opined that Plaintiff's symptoms of de Quervain's tendinitis left her completely disabled. (Tr. 212, 228). In fact, Plaintiff denied remembering any trauma to the wrist to both doctors. (Tr. 212, 228). Thus, the ALJ was justified in finding that Plaintiff's assertion of total disability due to a 1998 hand injury was not credible.

The ALJ was also justified in discounting Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms because her testimony was inconsistent with the medical evidence submitted, contrary to Plaintiff's argument on appeal. (Pl.'s Br. 12). Plaintiff argues that 20 CFR § 404.1529(c)(2) prohibits the ALJ from rejecting her testimony concerning the

5

intensity and persistence of her symptoms solely because the medical evidence does not substantiate her statements; however, the ALJ did not rely solely on the medical evidence to reject Plaintiff's statements. (Pl.'s Br. 12). In addition to the medical evidence, the ALJ considered Plaintiff's testimony about her daily activities, which include living independently with her twelve-year old son, driving short distances, clothing and bathing herself, taking care of her son (Tr. 391-397). Also, the ALJ considered the severity of her treatment, which indicated a stable condition, as Plaintiff's tendinitis was treated with cortisone shots and medication since 2006. (Tr. 210-222, 293-305). Further, the ALJ considered the side effects of Plaintiff's medication, which he decided where "minimal." (Tr. 20). Lastly, the ALJ had the opportunity to observe and consider Plaintiff's demeanor. "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993) (per curiam) (quoting *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir.1987)).

Plaintiff is not entitled to reversal based on the ALJ's credibility findings with respect to the intensity, persistence and limiting effects of her pain symptoms. The ALJ considered the factors in 20 CFR 404.1529(c)(3) and made findings on those factors, which are supported by the medical evidence, Plaintiff's testimony about her daily activities, course of treatment, and medication side-effects. Thus, this court will not disturb the ALJ's credibility findings with respect to Plaintiff's symptoms.

Lastly, Plaintiff argues that the ALJ's finding that "the large gap in medical treatment demonstrates stable symptoms and does not bolster her credibility or support total disability and an

inability to perform all work" shows that the ALJ failed to question Plaintiff about her gaps in treatment, which he is required to do, and he used the treatment gaps to make a medical determination unsupported by the record. (Pl.'s Br. 15-16). The Commissioner responds that Plaintiff has not identified a reason in the record for the treatment gaps other than the one used by the ALJ: a stable condition. (Def.'s Br. 16).

Plaintiff's reliance on *Stennant v. Comm'r Soc. Sec.*, 476 F.Supp.2d 665, 672 (E.D. Mich. 2007) for the proposition that a "claimant's subjective complaints may not be rejected based upon the claimant's failure to seek treatment without first considering whether the failure results from an inability to afford treatment" is a stretch, at best. (Pl.'s Br. 15). In *Stennant*, the court held that the ALJ's finding that the claimant did not suffer disabling pain was not supported by substantial evidence. 476 F.Supp.2d at 671. In that case, the claimant had undergone two back surgeries and had ceased physical therapy after the second surgery due to the cost. *Id.* at 673. No where in *Stennant* did the court rule that the ALJ must investigate the reason for ceasing treatment. Indeed, here, as in *Stennant*, the record documents the reasons for gaps in treatment. Here, Plaintiff experienced "flare ups" of pain in her wrist and neck/back, and in *Stennant*, the doctor noted in his chart that he quit physical therapy due to the expense. Moreover, the record here does not support Plaintiff's implication that she did not seek treatment due to cost. Plaintiff, therefore, is not entitled to reversal or remand on this ground.

In sum, Plaintiff has not shown that the ALJ committed an error, requiring reversal or remand, in evaluating her credibility. Accordingly, Plaintiff is not entitled to summary judgment. On the other hand, Defendant has shown that the ALJ's credibility findings are supported by substantial evidence. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim that

her credibility was improperly evaluated.

### B. Dr. Wagner's Treatment Records

Next, Plaintiff contends that the ALJ erred by "disregarding medical documentation from Dr. Wagner" in evaluating her condition. (Pl.'s Br. 13). Plaintiff also argues that the ALJ rejected Dr. Wagner's opinion, as a treating physician, without stating a reason for doing so. (Pl.'s Br. 14). Plaintiff asserts that if the ALJ had properly evaluated Dr. Wagner's records, the ALJ would have concluded that there was medical proof of an impairment that could reasonably be expected to result in disabling pain. (Pl.'s Br. 14).

The Commissioner concedes that the ALJ did not discuss Dr. Wagner's treatment records from 2008. (Def.'s Br. 13). Nonetheless, the Commissioner argues that the 2008 records do not support a finding of a condition that would lead to disabling pain. (Def.'s Br. 13). The Commissioner asserts that, "contrary to Plaintiff's contentions, the evidence is not consistent with cervical radiculopathy or carpal tunnel syndrome." (Def.'s Br. 13).

The court notes that the April 15, 2008 office note from Dr. Wagner is not included in the Administrative Record. Other medical records from 2007 and 2008 that Plaintiff provided with the missing office note are in the Administrative Record. (Tr. 159-161, 365-384). Irregardless of whether the office note was provided and not considered by the ALJ or whether Plaintiff did not actually send the office note, Plaintiff's statement of what the office note states does not support Plaintiff's claim of complete disability due to wrist pain. Plaintiff states that Dr. Wagner's April 15, 2008 office note documented "mildly positive provocative tests for carpal tunnel syndrome, tenderness over the scaphoid wrist and in the anatomic snuff-box, reduced range of motion in the cervical spine with a markedly positive Spurling's axial compression test and brisk reflexes

8

bilaterally." (Pl.'s Br. 8-9). Dr. Wagner also recommended an MRI. (Pl.'s Br. 9). The MRI, performed on May 6, 2008, revealed a "tiny central disc bulge without stenosis" on C6/C7. (Tr. 365).

Dr. Wagner's April 15, 2008 office note and the MRI results are consistent with the other medical evidence in the record, which documents Plaintiff's tendinitis and neck and back pain. The office note does not document a worsening of Plaintiff's condition, nor does the MRI show a neck/back condition that would lead to debilitating pain. Rather, the office note and the MRI show that Plaintiff continued to experience pain in her wrist, neck and back. These conditions are well documented in the other medical records, and the missing office note does not provide proof positive that Plaintiff had a disabling condition. Thus, the fact that the ALJ did not consider the April 15, 2008 office note is inappositive.

The court also notes that the ALJ did not reject Dr. Wagner's opinion. Dr. Wagner opined that Plaintiff had de Quervain's tendinitis and in the April 15, 2008 office note he noted mild positive symptoms for carpal tunnel syndrome and reduced range of motion in the cervical spine. (Tr. 227). The ALJ credited Dr. Wagner's findings in his opinion and the ALJ never explicitly disagreed with Dr. Wagner's opinions. (Tr. 20). Notably, Dr. Wagner never opined that Plaintiff was completely disabled due to the impairments he treated for her. Even if the ALJ had been presented with the April 15, 2008 office note, it is reasonable to assume that the ALJ would have reached the same conclusions in this case and remand is not necessary. *See Hollon ex rel. Hollon v. Comm'r Soc. Sec.*, 447 F.3d 477, 484-85(6th Cir. 2006).

**C. Dr. Qadir's Opinion**

Plaintiff argues that the ALJ erred by disregarding Dr. Qadir's opinion in determining that

9

Plaintiff's mental impairment does not cause more than a minimal limitation in her ability to perform basic mental work activities. (Pl.'s Br. 17). Plaintiff further argues that the ALJ should have adopted the moderate limitations prescribed by Dr. Qadir. (Pl.'s Br. 17-18).

The Commissioner responds that Dr. Khan, the reviewing state agency medical consultant, considered Dr. Qadir's report and translated Dr. Qadir's evaluation into functional limitations and the ALJ properly relied upon Dr. Khan's assessment. (Def.'s Br. 14). Also, the Commissioner argues that the ALJ did not err by not incorporating Dr. Qadir's limitations because Dr. Qadir did not indicate that Plaintiff had moderate limitations in any of the functional categories. (Def.'s Br. 14).

With respect to Plaintiff's mental impairment, the ALJ wrote:

> The claimant's medically determinable mental impairment of an adjustment disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CRF, Part 404, Subpart P, Appendix 1).

(Tr. 17).

The ALJ went on to note that Dr. Qadir completed a mental status examination on December 5, 2005 during which he concluded that Plaintiff had an adjustment disorder with depressed mood associated with her health complaints and a Global Assessment of Functioning Scale of 52, which indicates moderate symptoms. (Tr. 17). In addition, the ALJ found that Plaintiff has a mild limitation in the functional area of activities of daily living and no limitations in the areas of social functioning, concentration, persistence or pace and decompensation. (Tr. 17).

Plaintiff does not specifically identify any medical evidence in the record that contradicts the ALJ's findings about her mental limitations. Indeed, none appears to exist. The psychiatric

review Plaintiff provided to the ALJ reports that Plaintiff's mental impairment of an affective disorder is not severe. (Tr. 194). Further, Dr. Qadir's report documents an affective disorder with depressed mood. (Tr. 193). Dr. Qadir also noted that Plaintiff was not under treatment for a mental health issue and never has received mental health treatment. (Tr. 190). These records do not establish a severe mental limitations. Also, Dr. Qadir did not prescribe any moderate limitations, contrary to Plaintiff's assertion. In sum, the ALJ properly considered the mental health evidence and did not disregard Dr. Qadir's opinion or the other psychiatric records provided by Plaintiff. All of the medical evidence supports the ALJ's conclusion that Plaintiff has a nonsevere mental limitation.

### D. The Vocational Expert's Hypothetical

Plaintiff contends that that the hypothetical the ALJ posed to the vocational expert was incomplete because it did not include all of her impairments. (Pl.'s Br. 17-19). Plaintiff argues that the ALJ should have included the moderate limitations proposed by Dr. Qadir and her testimony concerning the side effects she experiences from her medication. (Pl.'s Br. 17). The Commissioner responds that the ALJ incorporated all of Plaintiff's limitations into the hypothetical posed to the vocational expert. (Def.'s Br. 17).

In deciding whether the claimant has the residual functional capacity to perform any other substantial gainful activity, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987). The hypothetical question, however, must accurately describe the claimant's physical and mental impairments. *See id.*

In this case, the ALJ properly incorporated Plaintiff's limitations into the hypothetical posed

11

to the vocational expert.  As discussed above, Dr. Qadir did not prescribe any limitations, contrary to Plaintiff's assertion.  The ALJ, therefore, was not required to incorporate those limitations that did not exist.  Further, Plaintiff's attorney, in her questioning of the vocational expert, asked the vocational expert if Plaintiff would be able to perform the proposed jobs "if she became so drowsy [due to her medication] that she needed to lay down" and the vocational expert stated that such a limitation would preclude employment.  (Tr. 416).  Thus, even though the ALJ did not include a limitation based on Plaintiff's medication side effect testimony, Plaintiff's attorney made sure that the ALJ was aware that Plaintiff would not be employable if her medication side effects forced her to take naps. Because Plaintiff's attorney cured any error that could be attributed to the ALJ's hypothetical at the administrative hearing, Plaintiff is not entitled to remand or reversal on this basis.

## IV. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich.

LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


SO ORDERED.


        S/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge


Dated: January 5, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 5, 2010.

        s/Jane Johnson
        Case Manager to
        Magistrate Judge Virginia M. Morgan